ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL IX

| ASOCIACIÓN DE RESIDENTES DE SABANERA RÍO, INC.<br><br>Parte Apelada<br><br>v.<br><br>AUDELIZ LEBRÓN ROSA<br><br>Parte Apelante | TA2025AP00266 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Gurabo<br><br>Caso Núm.: GR2025CV00154<br><br>Sobre: Injunction (Entredicho Provisional, Injunction Preliminar y Permanente |

Panel integrado por su presidenta, la Juez Brignoni Mártir, el Juez Salgado Schwarz y la Juez Aldebol Mora.

Salgado Schwarz, Carlos G., Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico a 10 de octubre de 2025.

Comparece ante nos Audeliz Lebrón Rosa (en adelante, "apelante") para solicitar la revocación de una *Sentencia* emitida el 18 de julio de 2025[1] por el Tribunal de Primera Instancia, Sala Superior de Caguas (en adelante "TPI"). Mediante dicha *Sentencia*, el foro primario declaró *HA LUGAR* una *Demanda*[2] presentada por la Asociación de Residentes de Sabanera del Río, Inc. (en adelante "apelados"). Como resultado, se le ordenó al apelante la demolición de las obras realizadas en su propiedad, por carecer de permiso de construcción, porque nunca se obtuvo, y se le concedió 30 días calendarios para cumplir, so pena de desacato.

---

[1] Notificada el 21 de julio de 2025.
[2] Véase Entrada #12 del Sistema Unificado de Manejo y Administración de Casos del Tribunal de Primera Instancia (SUMAC TPI).

Por los fundamentos que exponemos a continuación, se **confirma** la Sentencia apelada.

-I-

En lo referente a la controversia que nos ocupa, en mayo de 2025, los apelados presentaron una *Demanda*[3] sobre Solicitud de *Injunction* Preliminar y Permanente, y Solicitud de *Injunction* Estatutario. Los apelados alegaron que, el apelante realizó construcciones o mejoras en su propiedad sin la autorización previa del Comité de Arquitectura de la Asociación de Residentes y de la Oficina de Gerencia y Permisos (OGPe) y/o el Municipio Autónomo de Carolina. Solicitaron que se declarara con lugar la solicitud de *injunction* preliminar y permanente, y que se le ordenara al apelante a abstenerse directa o indirectamente de continuar las obras construidas sin permiso, y las demuela a su propio y personal peculio.

Específicamente, arguyeron que el apelante, en agosto de 2023, solicitó autorización al Comité de Arquitectura de la Asociación de Residentes para la construcción de un estacionamiento techado con placas solares y un área de "family room", en la parte posterior de la residencia, el cual fue concedido ese mismo mes. Sostuvieron que, el apelante hizo cambios no autorizados a dicho "family room" y que, adicionalmente, inició la construcción de una verja perimetral y una estructura tubular en la parte frontal de la residencia, sin notificar ni obtener la debida autorización. Los apelados argumentaron que dichas acciones constituyen

---

[3] Véase Entrada #1 de SUMAC TPI.

una violación a la Escritura de Condiciones Restrictivas, a los estatutos y reglamentos de la Asociación y esto, sin contar con las debidas autorizaciones de la OGPe o del municipio correspondiente.

Luego de varios trámites procesales, el TPI dictó Sentencia el 18 de julio de 2025[4], en la que declaró *CON LUGAR* la Demanda presentada por los apelados y ordenó, por carecer de permiso de construcción, porque nunca se obtuvo, la demolición de las siguientes obras:

1. La estructura tubular (garaje) anclada a la residencia y a la verja perimetral;
2. La verja perimetral de concreto u hormigón construidos sin permisos; y
3. Cualquier modificación no autorizada al "family room" y a la remodelación de la piscina.

Además, le concedió al apelante 30 días calendarios para cumplir con la mencionada orden y estableció que, el incumplimiento con dicha *Sentencia* daría lugar a que se halle en incurso de desacato, pudiendo ser castigado por el Tribunal con multa no menor de cien dólares ($100) ni mayor de quinientos dólares ($500), diarios.

Inconforme, el apelante acude ante nos, mediante el *Recurso de Apelación*[5], e hizo los siguientes señalamientos de error:

**PRIMERO:** ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL EMITIR SENTENCIA EN EL PLEITO DE EPÍGRAFE AL ORDENAR LA DEMOLICIÓN DE LAS MEJORAS Y/O REMODELACIONES REALIZADAS POR LA PARTE DEMANDADA-APELANTE SIN RESOLVER LA CONTROVERSIA MEDULAR, ES DECIR, SI LAS OBRAS

---

[4] Notificada el 21 de julio de 2025.
[5] Véase Entrada #1 del Sistema Unificado de Manejo y Administración de Casos del Tribunal de Apelaciones (SUMAC TA).

EN CONTROVERSIA ESTÁN EXENTAS DE TRAMITAR PERMISO DE CONSTRUCCIÓN ANTE LA OGPE O NO.

**SEGUNDO:** ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL EMITIR SENTENCIA EN EL PRESENTE CASO Y ORDENAR LA DEMOLICIÓN DE CIERTAS PARTES DE LA PROPIEDAD DEL DEMANDADO-APELANTE SIN TAN SIQUIERA HABER SIDO RECLAMADO EN LA DEMANDA.

**TERCERO:** ERRO EL TRIBUNAL DE PRIMERA INSTANCIA AL EMITIR COMO SENTENCIA UN PROYECTO DE SENTENCIA PREPARADO Y REDACTADO POR LA PARTE DEMANDANTE-APELADA EL CUAL OMITE HECHOS MEDULARES Y QUE SON DE GRAN IMPORTANCIA PARA LA RESOLUCIÓN DEL PRESENTE CASO QUE SUSTENTAN LA POSICIÓN DE LA PARTE DEMANDADA-APELANTE.

Con la comparecencia de las partes, procedemos a resolver.

**-II-**

Es pertinente destacar que, dada la fecha en que comenzaron los hechos en el caso de autos, entiéndase, el 11 de agosto de 2023, el *Reglamento Conjunto Para La Evaluación Y Expedición De Permisos Relacionados Al Desarrollo, Uso De Terrenos Y Operación De Negocios*[6] que rige la presente controversia es el aprobado y vigente a partir del 16 de junio de 2023. Esto, ya que, el Tribunal Supremo de Puerto Rico declaró que **el Reglamento Conjunto de 2019 y el Reglamento Conjunto de 2020 son nulos**[7]. Aclarado este particular, procedemos con el derecho aplicable.

### A. Reglamento Conjunto

El *Reglamento Conjunto para la Evaluación y Expedición de Permisos Relacionados al Desarrollo, Uso de Terrenos y Operación de Negocios* (Reglamento Conjunto de 2023)[8]

---

[6] Reglamento Conjunto para la Evaluación y Expedición de Permisos Relacionados al Desarrollo, Uso de Terrenos y Operación de Negocios, Reglamento Núm. 9473, Junta de Planificación, 16 de junio de 2023.

[7] *Martínez Fernández et al. v. OGPE et al.*, 212 DPR 285, 290 (2023). (Énfasis Suplido).

[8] Reglamento Conjunto de 2023, *supra*, a la pág. 125.

establece en la sección 3.2.1.1, en su inciso (a) que, se presentará una solicitud de Permiso de Construcción para toda obra que contemple una (1) o más de las siguientes actividades: 1. Construcción; 2. Reconstrucción; 3. Remodelación; 4. Demolición; 5. Obras de urbanización; 6. Restauración; 7. Rehabilitación; 8. Ampliación; o 9. Alteración. Sin embargo, dicho Reglamento establece también obras que están exentas de permisos de construcción. En su sección 3.2.4.1, enumera las actividades que no se consideran obras de construcción, para efectos del requisito de permisos. En lo pertinente a la controversia que nos ocupa, dispone específicamente:

> […]Las siguientes obras no se consideran obras de construcción y no requerirán un permiso de construcción, siempre y cuando no formen parte de otra obra o desarrollo mayor:

> […]9. Instalación de equipos o su relocalización cuando no conlleven instalación de elementos estructurales, mecánicos, plomería o eléctrica; […] 12. Instalación de rejas, verjas en "cyclone fence", "polyvinyl chloride" (pvc), metal, y materiales similares, siempre y cuando no conlleven instalación de elementos estructurales, mecánicos, plomería o eléctrica. […][9]

## B. Ley para la Reforma del Proceso de Permisos de Puerto Rico

Por su parte, en su Artículo 14.1, la Ley para la Reforma del Proceso de Permisos de Puerto Rico establece que,

> […]cualquier persona privada, natural o jurídica, que tenga un interés propietario o personal que podría verse adversamente

---

[9] Reglamento Conjunto de 2023, *supra*, a la pág. 128.

afectado, podrá presentar una acción de *injunction* […] para solicitar: […]

2) la paralización de una obra iniciada sin contar con las autorizaciones y permisos correspondientes, o incumpliendo con las disposiciones y condiciones del permiso otorgado; […]

4) la demolición de obras construidas, que al momento de la presentación del recurso y al momento de adjudicar el mismo no cuenten con permiso de construcción, ya sea porque nunca se obtuvo o porque el mismo ha sido revocado.[10]

### C. Restricciones Voluntarias

Las restricciones voluntarias sobre fincas, antes denominadas servidumbres en equidad, son las condiciones que limitan el uso de determinados terrenos y mediante las cuales se imponen cargas o gravámenes que obligan a presentes y futuros adquirientes.[11] Como norma general, estas restricciones las constituye el urbanizador de una finca de manera unilateral, con el fin de restringir las facultades de todo futuro adquiriente respecto al inmueble gravado.[12]

En términos jurídicos, las restricciones voluntarias se consideran un contrato entre las partes.[13] Bien sea porque las partes interesadas acordaron gravar sus propiedades para delimitar el uso o el tipo de edificación que se puede efectuar sobre estas.[14] De igual modo, las condiciones restrictivas se consideran un contrato entre las partes cuando los adquirientes posteriores de una propiedad ya gravada aceptan someterse a ellas.[15]

---

[10] Art. 14.1 de la Ley Núm. 161-2009 (23 L.P.R.A. § 9024).
[11] *SLG Fernández-Bernal v. RAD MAN et al.*, 208 DPR 310, 326 (2021).
[12] *Dorado del Mar v. Weber et al.*, 203 DPR 31, 42-43 (2019).
[13] *Residentes Parkville v. Díaz*, 159 DPR 374, 384 (2003).
[14] *Íd.*
[15] *Dorado del Mar v. Weber et al.*, *supra*, en la pág. 43.

Para que estas restricciones gocen de validez y eficacia, nuestra jurisprudencia ha delineado una serie de requisitos, a saber: (1) las limitaciones deberán ser razonables; (2) deben establecerse como parte de un plan general de mejoras; (3) deben constar de forma específica en el título de la propiedad, y (4) deben ser inscritas en el Registro de la Propiedad.[16]

Inscritas las condiciones restrictivas en el Registro de la Propiedad, estas constituyen derechos reales oponibles, *erga omnes*. Estas limitaciones al derecho de propiedad constituyen "una relación de servidumbres recíprocas, pues cada lote o solar es predio dominante, a la vez que sirviente, con relación a los demás lotes o solares de la urbanización".[17] Por consiguiente, las condiciones restrictivas son indivisibles. De manera que, cuando una finca gravada con condiciones restrictivas es segregada, la nueva finca queda gravada, a su vez.[18]

### D. Alegaciones en una Demanda según la Regla 6.1 de Procedimiento Civil

Las alegaciones en una demanda tienen el propósito de presentarle al tribunal los hechos en que las partes apoyan o niegan el derecho en controversia, precisar aquellos que las partes acepten como ciertos y señalar aquellos que consideran están en controversia y sobre lo cuales se presentará prueba para que el tribunal formule las conclusiones procedentes.[19] La Regla 6.1 de Procedimiento Civil, procedente de la Regla 8 de

---

[16] *Fernández Martínez v. RAD-MAN et al., supra*, en la pág. 327.
[17] *Íd.*
[18] *Fernández Martínez v. RAD-MAN et al. supra*, en la pág. 326.
[19] R. Hernández Colón, Práctica Jurídica de Puerto Rico: Derecho procesal civil, 6ª ed. Rev., San Juan, Ed. LexisNexis de Puerto Rico, 2017, pág. 279.

Procedimiento Civil federal[20], establece la norma sobre la formulación de alegaciones en una demanda y dispone lo siguiente:

> Una alegación que exponga una solicitud de remedio contendrá:
>
> (1) Una relación sucinta y sencilla de los hechos demostrativos de que la parte peticionaria tiene derecho a un remedio, y
>
> (2) Una solicitud del remedio a que crea tener derecho. Podrán ser solicitados remedios alternativos o de diversa naturaleza.[21]

Nuestro más alto foro ha determinado que al amparo de la Regla 6.1 de Procedimiento Civil, "*no tienen que exponerse detalladamente en la demanda todos los hechos que dan base a la reclamación.*"[22] "*[A] la parte que persigue un remedio solo [sic] se le requiere presentar en su alegación una reclamación redactada de forma general.*"[23]

La Regla 6.1, impone al demandante una obligación relativamente leniente. Un demandante cumple con la exigencia de la regla al notificar al demandado de su reclamación y del remedio de tal modo que permita al demandado formular su contestación. […] No obstante, si bien el deber que se le exige al demandante es bastante liberal y se le requiere brevedad en su exposición, la alegación debe aún contener la suficiencia fáctica que se necesita para que el demandado reciba una adecuada notificación sobre lo que se le reclama y la base que la sustenta.[24]

---

[20] Fed. R. Civ. P. 8.
[21] 32 LPRA Ap. V, R. 6.1.
[22] *León Torres v. Rivera Lebrón*, 204 DPR 20, 40 (2020).
[23] J.A. Echevarría Vargas, Procedimiento civil puertorriqueño, 3ª ed. Rev. Bogotá, Ed. Nomos S.A., 2023, pág. 95.
[24] R. Hernández Colón, *supra*, pág. 287.

Por lo tanto, la información contenida en una demanda *"debe estar a tono con los requisitos mínimos de notificación según requiere el debido proceso de ley."*[25]

### E. Proyecto de Sentencia

El canon 9 de los Cánones de Ética Judicial de Puerto Rico[26] establece las instancias en las que el Tribunal de Primera Instancia podrá solicitar a una o ambas partes proyectos de sentencia. El canon dispone que el juzgador es quien tiene la función indelegable de evaluar y adjudicar valor probatorio a la prueba que desfile ante sí. Por otro lado, el canon establece que: "En cualquier asunto sometido a su consideración podrán, cuando a su juicio lo requieran los fines de la justicia, solicitar proyectos de sentencias, resoluciones, u órdenes, […]"[27]. Por lo que, sin abdicar el deber de evaluar la prueba, el Tribunal de Primera Instancia puede solicitar proyectos de sentencia, los cuales serán únicamente instrumentos auxiliares[28].

Conforme a lo anterior, los comentarios al canon antes citado explican que el Tribunal Supremo de Puerto Rico ha expresado que un proyecto de sentencia no es otra cosa que un instrumento de ayuda al magistrado sobrecargado por la carga judicial ante su consideración. A su vez, el comentario aclara que lo censurable no es que se solicite un proyecto de sentencia, sino que el magistrado lo adopte sin hacer

---

[25] *León Torres v. Rivera Lebrón*, supra, pág. 40.
[26] Canon 9 de los Cánones de Ética Judicial de Puerto Rico de 2005 (4 LPRA Ap. IV-B, C-9).
[27] *Íd.*
[28] *Íd.*

una evaluación en la que se asegure que lo que allí se detalla es lo que realmente desfiló en sala[29].

Sobre el particular, el Tribunal Supremo ha reiterado que los proyectos de sentencia son instrumentos auxiliares que sirven de punto de partida o documento inicial que, con su eventual elaboración por parte del magistrado correspondiente, resultará en la opinión final del tribunal[30]. Asimismo, el tribunal ha sido enfático en la prohibición de firmar proyectos de sentencia a ciegas, pues ello no sería otra cosa que claudicar la responsabilidad adjudicadora inalienable de un juez de instancia. Por lo que, los proyectos de sentencia: "[…] no pueden sustituir los dictados de la sana y juiciosa crítica del juez en su labor de desentrañar la verdad"[31].

No obstante, el beneficio que pueda representar este instrumento auxiliar supone una multiplicación de la responsabilidad adjudicativa y ética del magistrado, toda vez que el juez que solicite un proyecto de sentencia tiene la obligación de escudriñarlo. Únicamente de esta forma, el juez puede separar una sentencia final de un proyecto qua ha sido preparado por una parte que naturalmente, buscará "salir por la puerta ancha"[32].

-III-

En vías de atender efectivamente los señalamientos de error esbozados por la parte apelante, este Panel

---

[29] *Íd.*
[30] *Román Cruz v. Díaz Rifas*, 113 DPR 500, 508 (1982), según citado en *Nieves Díaz v. González Massas*, 178 DPR 820, 853 (2010).
[31] *Malavé v. Hosp. De la Concepción*, 100 DPR 55, 56 (1971); *Nieves Díaz v. González Massas*, supra.
[32] *Román Cruz v. Díaz Rifas*, *supra*.

tuvo la oportunidad de escuchar íntegramente, la regrabación del juicio, incluyendo los testimonios de los testigos, José Javier Díaz Vega y Audeliz Lebrón Rosa. Sus testimonios sostienen las determinaciones de hechos esbozados en la Sentencia Apelada.

En el caso que nos ocupa, el apelante señala como primer error que, el TPI erró al ordenar la demolición de las mejoras y/o remodelaciones realizadas por este, sin resolver la controversia de si, las obras están exentas de tramitar un permiso de construcción ante la OGPe. No le asiste la razón.

En la Sentencia emitida por el TPI, de sus determinaciones de hechos, se desprende que las unidades de vivienda de la urbanización en la que el apelante reside y de la cual es titular, están gravadas por condiciones restrictivas que requieren que toda obra o mejora, a ser construida por los titulares, sea previamente aprobada por el Comité de Arquitectura designado por los apelados[33]. Y es que, previo a analizar si la obra está exenta o no, es claro que el apelante, al igual que cualquier otro titular, tiene una obligación clara de solicitar la aprobación del mencionado Comité.

Como discutimos anteriormente, dichas condiciones restrictivas, las cuales se encuentran inscritas en el Registro de la Propiedad, constituyen un contrato entre las partes. No cabe duda de que, a través de dichas condiciones, los titulares están obligados a cumplirlas y, de no cumplirlas, los apelantes pueden correctamente

---

[33] Véase Entrada #12 de SUMAC TPI, a la pág. 2.

exigir su cumplimiento que, en este caso, requiere una autorización, o en defecto de ello, la demolición de las obras realizadas, en contravención a las restricciones. Independientemente una obra estuviese o no exenta a la tramitación de un permiso de OGPe, dichas obras requieren, de todas maneras, una autorización emitida por el Comité designado.

Ahora bien, ello no quiere decir que, como alega el apelante, la verja estaba exenta de solicitar el permiso pertinente por parte de la OGPe. Y es que, de una mera lectura del Reglamento, en la sección 3.2.4.1, se desprende que las verjas que están exentas de la tramitación de un permiso son aquellas hechas en materiales tales como "cyclone fence", "polyvinyl chloride" (pvc), metal, y materiales similares[34]. Y en el caso de epígrafe, claramente está establecido que la verja de la cual el apelante inició la construcción es en hormigón o concreto[35] al cierre el apelante admitió contiene una instalación eléctrica. Entendemos que dicha construcción no está exenta de la tramitación de permiso para construcción ante a la OGPe. Por esto, esta curia entiende que no se cometió el primer error.

En su segundo error, el apelante señaló que, el TPI erró al ordenar la demolición de ciertas partes de su propiedad sin tan siquiera haber sido reclamado en la demanda. No le asiste la razón.

Es un concepto medular en nuestro ordenamiento jurídico que, el propósito de las alegaciones en una demanda es comunicarle a la parte contraria a qué remedio

---

[34] Reglamento Conjunto de 2023, *supra*, a la pág. 128.
[35] Véase Entrada #12 de SUMAC TPI, a la pág. 3.

cree tener derecho y los hechos que lo demuestran, para que dicha parte pueda formular una contestación. Ahora bien, no tiene que exponerse detalladamente todos los hechos que dan base a la reclamación. En este caso, surge claramente de la demanda que la reclamación hecha por parte de los apelados, en esencia, es que el apelante no cumplió con su obligación de solicitar autorización al comité de Arquitectura de la Asociación de Residentes para realizar mejoras y construcción en su propiedad, ni contaba con los permisos pertinentes expedidos por la OGPe.

Aunque no surge específica y detalladamente de la demanda las mejoras realizadas a la piscina, el foro primario determinó en su Sentencia que, luego de aquilatar la prueba y de celebrar la vista correspondiente, la remodelación realizada por el apelante a la piscina tampoco contaba con ninguna autorización ni permiso. Sin lugar a duda, el TPI tiene toda la autoridad para conceder un remedio que está dictado y protegido en ley que, en este caso, procedía. Por esto, no se cometió el segundo error.

Como tercer y último error, el apelante señaló que, el TPI erró al emitir como Sentencia un Proyecto de Sentencia preparado y redactado por los apelados el cual, según el apelante, omite hechos medulares que son de gran importancia para la resolución del caso. Tampoco le asiste la razón. Veamos.

Está más que establecido que los tribunales tienen un deber indelegable de evaluar y adjudicar valor probatorio a la prueba desfilada ante sí. No obstante, esto no implica que esté prohibido el solicitar y tomar

en consideración un Proyecto de Sentencia de cualquiera de las partes en un pleito. De hecho, estos se consideran instrumentos auxiliares para ayudar al tribunal a encaminar su opinión. Sirve de punto de partida para que un magistrado comience a darle forma a la decisión que quiere. Empero, no es que se firmen proyectos de sentencia a ciegas ni que se omita el juicio del juez.

Habiendo dicho eso, el apelante alega específicamente que la mencionada Sentencia es un Proyecto de Sentencia firmado a ciegas, según este, "sin corroborar tan siquiera las disposiciones legales en las que se fundamenta"[36]. Nos parece una imputación infundada por parte del apelante, ya que es una mera suposición y no existe base alguna para concluir que el foro primario incurrió en tal conducta.

Además, en cuanto a la alegación de dejar de incluir hechos materiales y medulares importantes para la resolución del caso, es simple la respuesta. La esencia de este caso es si el apelante contaba o no con la autorización y los permisos pertinentes para realizar mejoras y/o construcción en su propiedad y si, en efecto, dicha autorización y permisos eran requeridas. Las respuestas a estas interrogantes son: primero, no. El apelante no contaba con la autorización ni permiso. Y, segundo, sí. Dicha autorización y permisos sí eran requeridos. Entendemos que no se cometió el tercer error. Finalmente, en cuanto a que con fecha de 20 de agosto de 2025 el demandante obtuvo una notificación de requisitos para la aprobación de un permiso de

---

[36] Véase Entrada #12 de SUMAC TPI, a la pág. 9.

construcción, es inmaterial a los fines del dictamen emitido por el TPI.

-IV-

Por los fundamentos antes expuestos, se **confirma** la Sentencia apelada.

Lo acordó y manda el Tribunal, y lo certifica la secretaria del Tribunal.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones